UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Civil Action No
Friedrich Lu, Plaintiff
v
Timothy Frates, Julie Wilder, Jason McGrane, Richard Curtin, and
Suffolk County Sheriff's Department, Defendants

## COMPLAINT

(1) The court has subject matter jurisdiction over this matter under 28 USC § 1331.

(2) Corporal Timothy Frates, correction officer Julie Wilder, captain Jason McGrane, lieutenant Richard Curtin are employees of Suffolk County Sheriff's Department, Massachusetts. They are sued in their personal capacity.

(3) What this happened to him, plaintiff Friedrich Lu had not seen news reports, or heard personal or anecdotal accounts of persons who have been incarcerated, that law enforcement officers in United States torture – except Justin Volpe's conviction of sexually assaulting Abner Louima while in custody.

(4)
(a) On Mar 23, 2017 around 7:50 am, Wilder and then Frates approached Lu who was by a trash bin at the edge of a parking lot, in front of House of Correction run by Sheriff's Department. Following custom or usage of said Department, Wilder issued conflicting orders, including her asking Lu to leave the parking lot. Lu protested about her authority to make such an order, because the Department does not own the parking lot. To which, Frates said the lot "is city's."

(b) Since October 2015 Lu stayed at the homeless shelter located at the other end of the parking lot, Suffolk sheriff's deputies have clashed with Lu a score times over his access of the parking lot. Mostly they insisted the lot was Department's (even after Lu told them the assertion was untrue) and threatened arrest or bodily harm; on those occasions, either deputies or Lu or both requested review from deputies' supervisors, who with cooler head, defused the tension. Mar 27 was different, where

Frates maintained property rights on behalf of another owner, and Lu again asked for intervention from a supervisor.

(5) Fast forward, the duo tackled Lu down and pinned him on the floor right in front of entrance to House of Correction. Lu made no move throughout. Frates rubbed Lu's whole body back and forth on the floor, Lu complained about the excessive force. Frates continued rubbing Lu for a few seconds more. Ten more seconds passed before Frates handcuffed Lu, without making an announcement of the arrest (as incident report later stated). Lu then stated it was illegal to put "foot" on his back (Frates would not allow Lu to see it, but Lu comes to believe Frates pressed his right knee over Lu's back for minutes).

(6) Under the pretext of finding Lu's identification cards, Frates emptied Lu's most pockets, throwing most everything on the floor, but took contents of one pocket (MBTA cards, cash, IDs).

(7) In the process of moving Lu about fifty yards from where he was arrested to a holding cell inside House of correction. Frates throughout firmly pressed Lu's left hand against the left forehand with the handcuff as the fulcrum – all while Wilder was holding Lu's right hand. Lu screamed out of pain. Inside the cell, having moved from Lu's left back (and Wilder moving left to take that position) to left front, Frates emptied a few more pockets of Lu's. Once done, Frates smirked a foot in Lu's face for fifteen seconds. To make sure Lu see it (smirking), Frates pulled up the hood of Lu's jacket, that (hood) had covered Lu's head. Then Frates smirked for fifteen additional seconds. Before they left Lu inside the cell, Wilder did the same by pressing Lu's left hand against his forearm. Lu again screamed. Afterwards Lu concluded the duo, especially Frates, were sadistic.

(8) A female employee of the Department came to ask Lu was injured. Lu pointed to his left cheek, from abrasion. She said there was no wound, but conceded it was red and swollen.

(9)     Frates and another (not Wilder) returned to move the handcuffed Lu to another cell. Along the short route, on Lu's left Frates again torture Lu the same way. Lu screamed. The other deputy sheriff did nothing. After the movement was done, Lu's request for the other deputy's badge number was ignored.

(10)    An hour later, a deputy from booking came to bring Lu there for a photograph, then returned Lu to the second cell. Another hour passed, deputies from booking took Lu there again, asked one another ("what the charge?"), settled to make a phone call and demanded the charge so as to send out fingerprints. They were told, "Disorderly conduct."

(11)    Around 1:30 pm (five and a half hours after the arrest), Lu was transported from Sheriff's Department to Boston Municipal Court for arraignment. At the courthouse, upon reading the charges listed in the complaint (which indeed contained disorderly conduct and three other patently false charges), Lu realized the torture was meant as the foundation of disorderly conduct charge, and that Frates and Wilder were more crafty than sadistic. Unfortunately for the deputies, the statutory language and case law for that crime require presence of the public, not to mention mens rea (as well as criminal defense of duress). After Lu was released on his own recognizance, two court officers handed Lu a small bag of Lu's property that had been prepared by the Department which was devoid of Lu's coins (including a silver dollar). On information and belief, all individual defendants destroyed most of Lu's property when he was taken into custody, including those in bags Lu toted.

(12)    On Mar 30, 2017 clerk's office of municipal court, while Lu was there to bring a motion to the courtroom, discovered in case file a copy of incident report from the Department and dated Mar 23, 2017 -- and handed a copy to Lu. The incident report stated that McGrane and Curtin was present -- but did nothing to halt the duo's torture.

(13)    The instant complaint does not, because it can not, deal with validity of criminal complaint (including the charge of disorderly conduct), which remains pending at a state court.

(14)    Count One: 42 USC § 1983. All individual defendants -- under color of state law, as well as custom or usage of Suffolk County Sheriff's Department (on access to parking lot) -- subjected Lu to the deprivation of rights secured by Fourteenth Amendment (Due Process and Equal Protection Clauses; for the taking of coins, excessive force during arrest, and destruction of most of Lu's property), and Eighth Amendment (for torture) of United States Constitution.

(15)    Count Two: Robbery

(16)    Count Three: Embezzlement

(17)    Count Four: Assault and Battery.

(18)    Count Five: Malicious Destruction of Lu's property

(Counts Two to Five apply to all defendants -- individual and institutional.)

(19)    Lu demands injunctive relief and jury trial for damage, including punitive one. Asides Lu asks for court cost.

Plaintiff:      Friedrich Lu, pro se
Date:           March 31, 2017
Email address:  chi2flu@gmail.com
Address:        % St Francis House, PO Box 499, Lafayette Station, Boston, MA 02112